IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JACOB PATRICK DREADEN, )
)
    Plaintiff, )
) No. 3:15-cv-00961
v. ) Senior Judge Haynes
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
    Defendant. )

# MEMORANDUM

Plaintiff, Jacob Patrick Dreaden, filed this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) against the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, seeking judicial review of the denial of his applications for disability benefits and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act. Plaintiff's applications[1] cite his disability based upon his panic attacks, bipolar disorder, post-traumatic stress disorder ("PTSD"), lower back pain, and neck pain. Plaintiff's applications were denied and Plaintiff requested a hearing before an Administrative Law Judg ("ALJ"). (Docket Entry No. 15, Administrative Record ("AR") at 92).

After an evidentiary hearing, an ALJ found that Plaintiff was disabled under the Act. (AR at 11-26). In essence, the ALJ found as follows:

---

[1] To be entitled to disability benefits under Title II of the Act, Plaintiff had the burden to show that he was disabled prior to the expiration of his insured status on September 30, 2013 (Tr. 16). See 20 C.F.R. § 404.130; Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990). To be entitled to supplemental security income under Title XVI of the Act, Plaintiff must show that he was disabled while his application was pending. See 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330 and 416.335. Thus, the relevant time period for consideration in this case is from September 30, 2009 (the date Plaintiff alleges that he became disabled) through April 10, 2014 (the date of the ALJ's decision).

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since September 30, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bipolar disorder, panic disorder without agoraphobia, and post-traumatic stress disorder ("PTSD") (20 CFR 404.1520© and 416.920©).

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

* * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple and detailed, but not complex, tasks and not tasks requiring independent decisions at an executive level. The claimant can maintain concentration, persistence, and pace for such tasks with normal breaks spread throughout the day. He can interact appropriately with the public, supervisors, and coworkers, but would work better with things rather than people. The claimant can adapt to occasional changes within this type of work setting.

* * *

6. The claimant is capable of performing past relevant work as a dump truck driver, mixing truck driver, merchandise deliverer, maintenance worker, and first aid attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

* * *

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Docket Entry No. 15, AR at 16, 17, 18, 21, 22).

After the ALJ's decision, Plaintiff submitted additional evidence with the Appeals Council and requested a review of the ALJ's decision. The Appeals Council entered this evidence, id. at 7-8, but found that the evidence did not alter the basis for the ALJ's decision. Id. at 1-2. The Appeals Council denied Plaintiff's request for review. Id. at 1.

Before the Court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 16), seeking an award of benefits or in the alternative a remand and contending: (1) that the ALJ failed to consider and weigh properly the opinions of Plaintiff's treating physicians, Dr. Robert Jamieson, a psychiatrist, and Dr. Lawrence Jackson, a general practitioner; (2) that the ALJ failed to perform the requisite function-by-function assessments to evaluate properly Plaintiff's mental and physical impairments; (3) that the ALJ erred in evaluating Plaintiff's intellectual functioning, as a severe impairment under 20 C.F.R. § 404.1521 and 20 C.F.R. § 416.921; and (4) that the ALJ failed to evaluate properly Plaintiff's credibility on his subjective complaints.

In response (Docket Entry No. 18), the Commissioner contends that the ALJ correctly decided each of the issues raised by Plaintiff and that a remand is not warranted.

### A. Review of the Record

For the issues in this action, Plaintiff, who is 39 years old, has a special education diploma, but does not have a general equivalency diploma ("GED"). (Docket Entry No. 15, AR at 168-69). Plaintiff's past work has been sporadic and mostly unskilled work. Id. at 109-118. Plaintiff's earnings record and work history reflect efforts to secure several dozen jobs, but his inability to hold these jobs, due principally to his mental health conditions. Id. at 109-18, 321-42.

According to his medical records, Plaintiff was diagnosed with Bipolar Disorder (with obsessive compulsive features), Panic Disorder, Agoraphobia, Post-Traumatic Stress Disorder,

Anxiety, and Major Depression. Id. at 321-42. Dr. Robert Jamieson, a psychiatrist, has treated Plaintiff since at least September 30, 2011 upon referral from Dr. Lawrence Jackson, Plaintiff's general practitioner. Id. at 203-04. On September 30, 2011, in his initial evaluation, Dr. Jamieson noted Plaintiff's longstanding mental health symptoms that had significantly worsened. Id.

Dr. Jamieson's treatment notes reflect Plaintiff's anxiety with panic attacks, intense fear, cold sweats, difficulty breathing, chronic irritability, hyper-somnolence, isolation, decreased interest, low energy, low motivation, tearfulness, feeling overly sensitive, easy anger, history of suicidal thoughts and passive thoughts of death, mood cycling, impulsivity, history of high-risk activities, racing thoughts, periods of grandiosity, periods of high energy, hyper-sexuality, and intrusive obsessive thoughts. Id. at 203-04. The treatment notes also describe symptoms of PTSD, with nightmares and flashbacks. Id. Plaintiff witnessed three of his friends burn to death in automobile wrecks while working at a family member's ambulance service. Id. at 203. These treatment notes cite Plaintiff's exaggerated startled response, hypervigilance, and avoidance, as symptoms of Post Traumatic Stress Disorder ("PTSD"). In this initial evaluation, Plaintiff evinced symptoms of ongoing ADHD and had poor concentration and forgetfulness, as well as dyslexia. Id.

On October 13, 2012, Dr. Jamieson's medical source statement concerning Plaintiff's mental impairment noted Plaintiff as "markedly limited" as to his understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Id. at 281-85. Dr. Jamieson's handwritten additions included that Plaintiff had "severe depression," and "severe disability illness." Id. at 285.

Significant for this action is the ALJ's finding in discounting Dr. Jamieson's opinion that "After this appointment in April 2012, the claimant failed to return for any additional mental health

treatment." Id. at 20. After the ALJ's decision, Plaintiff submitted proof that clearly demonstrates Plaintiff's continuous treatment by Dr. Jamieson after April 2012.

The two non-examining consulting psychologists, Dr. Jane Dubois who found mild to moderate impairments and Dr. Dorothy Tucker, who agreed with Dr. Dubois rated Plaintiff on May 9, 2012, id. at 227, 242, and September 6, 2012, respectively. Id. at 264. Dr. Jamieson's psychiatric mental health report of October 30, 2012 was the most recent assessment of Plaintiff's mental condition. Unlike the psychologists, Dr. Jamieson has an ongoing and longer treatment relationship.

## B. Conclusions of Law

"[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996) (citing Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993)); see also Moore v. Comm'r of Soc. Sec., 573 F. App'x 540, 544 (6th Cir. 2014) ("To the extent Moore attempts to request review of evidence submitted by her treating physician after the ALJ issued its decision—namely, Dr. Knight's responses to a functional capacity questionnaire and a signed statement as to the amount of time Moore spent setting up a nebulizer and administering a treatment—that evidence is not part of the administrative record and is not subject to our review."). A remand for the consideration of this evidence would be pursuant to sentence six under 42 U.S.C. § 405(g) and is appropriate if the evidence is "new and material" and "good cause" is shown for the failure to present the evidence to the ALJ. Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 276 (6th Cir. 2010). Evidence is "new" if it did not exist at the time of the administrative proceeding and "material" if there is a reasonable probability that a different result would have been reached if

introduced during the original proceeding. Id.

Here, the evidence is new in that these treatment records do not appear to have been before the ALJ. These records are material in that these records contradict the ALJ's critical finding that Plaintiff ceased his mental health treatment in April 2012. The Commissioner cites Dr. Jamieson's treatment notes on his impairments, but as with his October 2012 assessments, Dr. Jamieson's April 30, 2014 opinion that is after the ALJ's decision, clearly imports that notwithstanding the ALJ's decision, despite the cited improvements, Plaintiff remains severely impaired and unable to work. The Commissioner cites improvement of Plaintiff's panic disorder and mood with medication, but panic disorder was only one of several of the four to five diagnoses in the Axis 1 category made by Dr. Jamieson. Dr. Jamieson cited Plaintiff's severe depression as a basis for Plaintiff's disability. As to the treating psychiatrist, the Act's regulations grant the treating physician's opinion "controlling weight." In any event, the Court cannot consider the merits of this proof except as to whether this proof is sufficient to justify a remand.

As to good cause for remand, the record is unclear as there is not any cover letter submitted with this new proof. The Social Security Agency made a records request of Jamieson's office reflecting that some records had been produced. (Docket Entry No. 15, AR at 261). In an unsigned response, a box is checked that his office did not have records for the "dates requested." Id. at 262. Yet, in an addendum, Dr. Jamieson's office provided records for April 2012, id. at 277-79, and an Exhibit 12F that Plaintiff cancelled a May 14, 2012 appointment. Id. at 280. In any event, the Court is reluctant to sanction Plaintiff who is mentally ill for any omission of the agency or his treating physician's office or his counsel. Plaintiff's mental illness constitutes good cause.

Thus, the Court concludes that a remand is the appropriate remedy to consider Plaintiff's post

April 2012 treatment and his treating physician's more recent assessment of Plaintiff's ability to work.

An appropriate Order is filed herewith.

**ENTERED** this the _30th_ day of September, 2016.

_____
WILLIAM J. HAYNES, JR.
Senior United States District Judge